**UNITED STATES DISTRICT COURT**

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| GURPARTAP SINGH,<br><br>    Petitioner,<br><br>  v.<br><br>WARDEN OF THE GOLDEN STATE ANNEX DETENTION FACILITY, et al.,<br><br>    Respondents. | Case No. 1:25-cv-01689-EPG-HC<br><br>ORDER GRANTING FIRST AMENDED PETITION FOR WRIT OF HABEAS CORPUS, DENYING MOTION FOR PRELIMINARY INJUNCTION AS MOOT, DIRECTING RESPONDENTS TO IMMEDIATELY RELEASE PETITIONER, AND DIRECTING RESPONDENTS TO FILE STATUS REPORT<br><br>(ECF Nos. 15, 16) |

Petitioner, represented by counsel, is an immigration detainee proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. The parties have consented to the jurisdiction of a United States magistrate judge. (ECF Nos. 6, 10, 12.) For the reasons stated herein, the Court grants the first amended petition for writ of habeas corpus on the second claim for relief and orders Petitioner's immediate release.

**I.**

**BACKGROUND**

Petitioner is a citizen of India who was initially apprehended and detained by immigration officials in Arizona on May 7, 2023.[1] On May 9, 2023, the Department of

---

[1] The first amended petition alleges that Petitioner was detained on May 6, 2023, (ECF No. 15 at 23), but Petitioner's Field Processing Form indicates that Petitioner was apprehended on May 7, 2023, (ECF No. 21-1 at 7).

1

Homeland Security ("DHS") issued a notice to appear ("NTA"), charging Petitioner with removability under section 212(a)(6)(A)(i) of the Immigration and Nationality Act ("INA"). (ECF No. 16-3 at 18.) On May 9, 2023, Petitioner was released on his own recognizance. (ECF No. 16-3 at 22.)

Subsequently, Petitioner filed an application for asylum and withholding of removal, received work authorization from DHS, and maintained steady employment at an order fulfillment center for a large online retailer. (ECF No. 16-2 at 3; ECF No. 16-3 at 1–13, 26–27.) Petitioner has never been arrested for, charged with, or otherwise accused of a crime. Petitioner has not received any notice from DHS or otherwise suggesting that he has committed any crimes or presented a national security risk. (ECF No. 16-2 at 3.)

On May 26, 2025, when Petitioner appeared for his U.S. Immigration and Customs Enforcement ("ICE") check-in appointment at the field office in Stockton, California, DHS officials arrested Petitioner without providing him with any clear notice or explanation of the basis for his arrest or re-detention. Petitioner reports that he did have some technical difficulties with a DHS GPS-enabled reporting application, but he does not believe that such issues resulted in a violation of the conditions of his parole. Upon his arrest, Petitioner was not afforded an opportunity to contest the basis of the revocation of his parole and re-detention and he has been detained without a bond hearing. (ECF No. 16-2 at 3–4.)

Following Petitioner's arrest on May 26, 2025, Petitioner was served with a Notice and Order of Expedited Removal, citing his alleged violation of section 212(a)(7)(A)(i)(I) of the INA for not having valid travel documents and omitting any reference to the original May 9, 2023 charge of violating section 212(a)(6)(A)(i) of the INA.[2] (ECF No. 16-2 at 4; ECF No. 16-3 at 34.) On June 5, 2025, DHS sent Petitioner a letter notifying him that his I-589 application was dismissed, given that he had been placed into expedited removal proceedings. (ECF No. 16-2 at 4; ECF No. 16-3 at 15–16.)

///

---

[2] Respondents similarly omit any reference to the original May 9, 2023 NTA. (ECF No. 21-1.)

1    On or around June 20, 2025, an asylum officer determined that Petitioner has a credible fear of persecution in India on the basis of his Sikh religious beliefs. (ECF No. 16-2 at 4; ECF No. 16-3 at 24–25.) On or around June 21, 2025, an NTA was served on Petitioner, alleging that he violated both sections 212(a)(7)(A)(i)(I) and 212(a)(6)(A)(i) of the INA. Specifically, the NTA states that Petitioner "entered the United States at an unknown location on or about May 7, 2023" and that he "was not then admitted or paroled by an immigration officer."[3] (ECF No. 16-2 at 4–5; ECF No. 16-3 at 19.)

On December 1, 2025, Petitioner filed a petition for writ of habeas corpus. (ECF No. 1.) On December 15, 2025, the Court appointed counsel for Petitioner. (ECF No. 8.) On December 31, 2025, Petitioner filed a first amended petition ("FAP") and a motion for preliminary injunction. (ECF Nos. 15, 16.) On January 8, 2026, Respondents filed an answer and opposition to preliminary injunction. (ECF No. 21.) On January 12, 2026, Petitioner filed a reply. (ECF No. 22.)

## II.

## DISCUSSION

In the FAP, Petitioner raises the following claims for relief: (1) prolonged detention that bears no reasonable relation to any legitimate government purpose, in violation of substantive due process; (2) re-detention after release without a pre-deprivation hearing, in violation of procedural due process; (3) arbitrary re-arrest absent material change in circumstances, in violation of the Fourth Amendment; (4) attempting to arbitrarily reclassify Petitioner on June 21, 2025 as being subject to both sections 212(a)(7)(A)(i)(I) and 212(a)(6)(A)(i) of the INA and placing him in expedited removal proceedings, in violation of the Administrative Procedure Act; (5) re-detention in violation of the INA, 8 U.S.C. § 1226(a). (ECF No. 15 at 26–31.) Petitioner raises the same claims in the motion for preliminary injunction.

Given that the petition and the motion for preliminary injunction raise the same claims and Respondents have filed an answer to the petition, the Court will "advance the trial on the

---

[3] Petitioner reports that he was confused by the allegation that he had not been inspected or "paroled," given the fact that on May 9, 2023, he was released on his own recognizance by an immigration officer. (ECF no. 16-2 at 5.)

3

merits and consolidate it with" the motion for preliminary injunction. Fed. R. Civ. P. 65(a)(2). See Dzhabrailov v. Decker, No. 20-CV-3118 (PMH), 2020 WL 2731966, at *4 (S.D.N.Y. May 26, 2020) (considering preliminary injunction and merits of habeas petition simultaneously). See also 28 U.S.C. § 2243 ("The court shall summarily hear and determine the facts, and dispose of [a petitioner's habeas petition] as law and justice require.").

### A. Exhaustion

Respondents argue that "[w]hen an alien fails to exhaust administrative review, courts should 'ordinarily' dismiss the habeas petition without prejudice or stay proceedings until he exhausts that process" because "[b]ypassing review by an IJ and the BIA is an 'improper' 'short cut.'" (ECF No. 21 at 5 (quoting Leonardo v. Crawford, 646 F.3d 1157, 1160 (9th Cir. 2011)). Respondents state:

> In his petition, Petitioner asserts that he is properly subject to 8 U.S.C. § 1226(a), and thus must, at least, be afforded a pre-deprivation hearing before an Immigration Judge. ECF 1 at 17–22. While Respondents position is that Petitioner's unlawful entrance and subsequent proceedings render him an applicant for admission under 8 U.S.C. § 1225, Petitioner's status has not been established by administrative review of that question.

(ECF No. 21 at 5.) Petitioner asserts that "[p]rudential exhaustion is not required here because it would be futile[.]" (ECF No. 22 at 8.) "Even if Petitioner eventually obtains a bond hearing in immigration court, a bond request is likely to be futile, as Respondents contend that Petitioner is categorically ineligible for bond" and "immigration court judges will cite *Matter of Yajure Hurtado*, 29 I. & N. Dec. 216 (BIA Sept. 5, 2025) to deny a bond hearing for Petitioner on jurisdictional grounds." (ECF No. 22 at 8.)

"As a prudential matter, courts require that habeas petitioners exhaust all available judicial and administrative remedies before seeking relief under § 2241." Ward v. Chavez, 678 F.3d 1042, 1045 (9th Cir. 2012) (citations omitted). However, because it is not a jurisdictional prerequisite, exhaustion can be waived. Id. (citations omitted). "Courts may require prudential exhaustion if":

> (1) agency expertise makes agency consideration necessary to generate a proper record and reach a proper decision; (2) relaxation of the requirement would encourage the deliberate bypass of the

administrative scheme; and (3) administrative review is likely to allow the agency to correct its own mistakes and to preclude the need for judicial review.

Puga v. Chertoff, 488 F.3d 812, 815 (9th Cir. 2007) (citations omitted)). "Nonetheless, even if the three *Puga* factors weigh in favor of prudential exhaustion, a court may waive the prudential exhaustion requirement if 'administrative remedies are inadequate or not efficacious, pursuit of administrative remedies would be a futile gesture, irreparable injury will result, or the administrative proceedings would be void.'" Hernandez v. Sessions, 872 F.3d 976, 988 (9th Cir. 2017) (quoting Laing v. Ashcroft, 370 F.3d 994, 1000 (9th Cir. 2004)).

Here, the Court finds that prudential exhaustion can be waived. "[W]here the agency's position on the question at issue 'appears already set,' and it is 'very likely' what the result of recourse to administrative remedies would be, such recourse would be futile and is not required." El Rescate Legal Servs., Inc. v. Exec. Off. of Immigr. Rev., 959 F.2d 742, 747 (9th Cir. 1991) (quoting SAIF Corp./Oregon Ship v. Johnson, 908 F.2d 1434, 1441 (9th Cir. 1990)). "The Court joins the multitude of district courts to consider this issue recently in the context of habeas petitions filed by immigrant detainees and finds 'pursuit of administrative remedies would almost certainly be futile given the BIA's recent holding that all noncitizens detained in the United States without admission are "seeking admission" for purposes of 8 U.S.C. § 1225(b)(2)(A) and must be detained.'" Cerro Huerta v. Bondi, No. 1:25-cv-00941-JLT-HBK (HC), 2026 WL 74152, at *3 (E.D. Cal. Jan. 9, 2026) (quoting Singh v. Andrews, No. 1:25-cv-01543-DCJ-SCR, 2025 WL 3523057, at *2 (E.D. Cal. Dec. 9, 2025)) (collecting cases). See Prem S. v. Warden of Golden State Annex Det. Facility, No. 1:25-cv-01869-TLN-SCR, 2025 WL 3724854, at *2 (E.D. Cal. Dec. 24, 2025) ("fundamentally disagree[ing]" with government's exhaustion argument because "it is clear any immigration judge and the BIA would accept § 1225(b)(2) applies to Petitioner given the BIA's recent decision in *Matter of Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025), which upheld the legal interpretation of § 1225(b)(2) that Respondents put forth" and therefore declining to "subject Petitioner to a fruitless exercise where this [is] a predetermined outcome"); Estrada-Samayoa v. Cruz, No. 1:25-CV-01565-EFB (HC), 2025 WL 3268280, at *8 (E.D. Cal. Nov. 24, 2025) ("The Court agrees that waiver of

1 petitioner's exhaustion of administrative remedies is appropriate. Petitioner has demonstrated
2 that presentation of his claims to the BIA would be futile in light of the BIA's decision in *Matter*
3 *of Yajure Hurtado,* 29 I&N Dec. 216 (BIA 20025).").

### B. Procedural Due Process

In his second claim for relief, Petitioner asserts that as "part of the liberty protected by the Due Process Clause, Petitioner has a weighty liberty interest in avoiding re-incarceration after his release." (ECF No. 15 at 27.) Petitioner contends that his "re-detention without a pre-deprivation hearing violated due process. Long after deciding to release Petitioner from custody on his own recognizance in 2023, Respondents re-detained Petitioner with no clear notice or opportunity to contest his re-detention before a neutral adjudicator before being taken into custody." (Id.)

"We examine procedural due process questions in two steps: the first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient." Kentucky Dep't of Corr. v. Thompson, 490 U.S. 454, 460 (1989) (internal citations omitted).

#### 1. Liberty Interest

Respondents argue that "Petitioner is an applicant for admission originally apprehended near the border, so his due process rights are minimal" and that "[d]ue process requires no further relief than that already provided in the parole process authorized by Congress." (ECF No. 21 at 9, 10.) In support of this position, Respondents rely on DHS v. Thuraissigiam, 591 U.S. 103 (2020), Landon v. Plasencia, 459 U.S. 21 (1982), United States ex rel. Knauff v. Shaughnessy, 338 U.S. 537 (1950), and Barrera-Echavarria v. Rison, 44 F.3d 1441 (9th Cir. 1995) (en banc). These cases addressed due process rights *with respect to admission*, as evidenced by the language from these cases quoted by Respondents. Here, however, Petitioner is not raising claims regarding the admission process. See Padilla v. U.S. Immigr. & Customs Enf't, 704 F. Supp. 3d 1163, 1171 (W.D. Wash. 2023) ("Defendants ask the Court to extract from Thuraissigiam a broad rule that any inadmissible noncitizen possesses only those due

process rights afforded to them by statute, regardless of the nature of their status or the relief they seek. But such a conclusion is untethered to the claim in Thuraissigiam and the Court's reasoning. Thuraissigiam's discussion of due process is necessarily constrained to challenges to admissibility to the United States."), appeal filed, No. 24-2801 (9th Cir. argued May 21, 2025); Castillo v. Wofford, No. 1:25-cv-01586-JLT-HBK, 2025 WL 3466064, at *8 (E.D. Cal. Dec. 2, 2025) (finding Barrera-Echavarria v. Rison, 44 F.3d 1441 (9th Cir. 1995) (en banc) and Thuraissigiam "inapposite and reject[ing] Respondents' argument that 'entry fiction' cases guide the analysis for cases not involving an expedited removal process"); J.E.H.G. v. Chesnut, No. 1:25-cv-01673-JLT SKO, 2025 WL 3523108, at *10 n.10 (E.D. Cal. Dec. 9, 2025) (rejecting similar government argument); Carmen G.C. v. Robbins, No. 1:25-cv-01648-KES-HBK (HC), 2025 WL 3521304, at *3–4 (E.D. Cal. Dec. 8, 2025) (rejecting similar government argument).

"[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent." Zadvydas v. Davis, 533 U.S. 678, 693 (2001). "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." Id. at 690. In Morrissey v. Brewer, 408 U.S. 471 (1972), the Supreme Court addressed whether due process requires a parolee be afforded some opportunity to be heard prior to revocation of parole. 408 U.S. at 472. In examining "the nature of the interest of the parolee in his continued liberty," the Supreme Court stated:

> The liberty of a parolee enables him to do a wide range of things open to persons who have never been convicted of any crime. The parolee has been released from prison based on an evaluation that he shows reasonable promise of being able to return to society and function as a responsible, self-reliant person. Subject to the conditions of his parole, he can be gainfully employed and is free to be with family and friends and to form the other enduring attachments of normal life. Though the State properly subjects him to many restrictions not applicable to other citizens, his condition is very different from that of confinement in a prison. . . . The parolee has relied on at least an implicit promise that parole will be revoked only if he fails to live up to the parole conditions.

Morrissey, 408 U.S. at 482. The Supreme Court found "that the liberty of a parolee, although indeterminate, includes many of the core values of unqualified liberty and its termination inflicts

7

a 'grievous loss' on the parolee and often on others" and held that "the liberty is valuable and must be seen as within the protection of" due process. Morrissey, 408 U.S. at 482.

Relying on Morrissey, courts in this district have consistently held that noncitizens who have been released from immigration custody pending civil removal proceedings have a protected liberty interest in remaining out of immigration custody. See, e.g., Doe v. Becerra, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025); J.A.E.M. v. Wofford, No. 1:25-cv-01380-KES-HBK (HC), 2025 WL 3013377, at *3–6 (E.D. Cal. Oct. 27, 2025); J.C.L.A. v. Wofford, No. 1:25-cv-01310-KES-EPG (HC), 2025 WL 2959250, at *3–5 (E.D. Cal. Oct. 17, 2025); Qazi v. Albarran, No. 2:25-cv-02791-TLN-CSK, 2025 WL 3033713, at *4 (E.D. Cal. Oct. 10, 2025); Martinez Hernandez v. Andrews, No. 1:25-cv-01035 JLT HBK, 2025 WL 2495767, at *10 (E.D. Cal. Aug. 28, 2025); Yang v. Kaiser, No. 2:25-cv-02205-DAD-AC (HC), 2025 WL 2791778, at *8 (E.D. Cal. Aug. 20, 2025); Maklad v. Murray, No. 1:25-cv-00946 JLT SAB, 2025 WL 2299376, at *7–8 (E.D. Cal. Aug. 8, 2025). Accordingly, the Court finds that Petitioner has a protected liberty interest in remaining out of immigration custody.

   2. *Mathews* Test

In Mathews, the Supreme Court held that "identification of the specific dictates of due process generally requires consideration of three distinct factors":

> First, the private interest that will be affected by the official action; second, the risk of erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirements would entail.

Mathews, 424 U.S. at 334.

With respect to the first factor, the Court finds that the private interest at issue is fundamental. The Ninth Circuit has recognized that it "is beyond dispute" an immigration detainee's "private interest at issue here is 'fundamental': freedom from imprisonment is at the 'core of the liberty protected by the Due Process Clause.'" Hernandez v. Sessions, 872 F.3d 976, 993 (9th Cir. 2017) (quoting Foucha v. Louisiana, 504 U.S. 71, 80 (1992)).

///

With respect to the second factor, "'the risk of an erroneous deprivation [of liberty] is high' where, as here, '[the petitioner] has not received any bond or custody redetermination hearing.'" J.A.E.M., 2025 WL 3013377, at *7 (alterations in original) (quoting A.E. v. Andrews, No. 1:25-cv-00107-KES-SKO (HC), 2025 WL 871334, at *5 (E.D. Cal. Mar. 19, 2025)). "Civil immigration detention, which is 'nonpunitive in purpose and effect[,]' is justified when a noncitizen presents a risk of flight or danger to the community." Omer G. G. v. Kaiser, No. 1:25-cv-01471-KES-SAB (HC), 2025 WL 3254999, at *7 (E.D. Cal. Nov. 22, 2025) (alteration in original) (quoting Zadvydas, 533 U.S. at 690). Petitioner's release on recognizance necessarily required a determination that he posed neither a flight risk nor a danger. Rocha Chavarria, 2025 WL 3533606, at *4 (citing 8 C.F.R. § 212.5(b); Noori v. Larose, No. 25-cv-1824-GPC-MSB, 2025 WL 2800149, at *3 (S.D. Cal. Oct. 1, 2025)); Saravia v. Sessions, 280 F. Supp. 3d 1168, 1176 (N.D. Cal. 2017) ("The federal government sometimes releases noncitizens on bond or parole while their removal proceedings are pending. Release reflects a determination by the government that the noncitizen is not a danger to the community or a flight risk."), aff'd sub nom. Saravia for A.H. v. Sessions, 905 F.3d 1137 (9th Cir. 2018). Respondents do not argue that Petitioner is now a flight risk or a danger to the community. "[A]s there have been no procedural safeguards to determine if petitioner's re-detention is justified, 'the probable value of additional procedural safeguards, i.e., a bond hearing, is high.'" Sharan S., 2025 WL 3167826, at *10 (quoting A.E., 2025 WL 1424382, at *5).

With respect to the third and final factor, "although the government has a strong interest in enforcing the immigration laws, the government's interest in detaining petitioner without a hearing is 'low.'" J.A.E.M., 2025 WL 3013377, at *7 (citing Ortega v. Bonnar, 415 F. Supp. 3d 963, 970 (N.D. Cal. 2019); Doe, 787 F. Supp. 3d at 1094). See Henriquez v. Garland, No. 5:22-cv-00869-EJD, 2022 WL 2132919, at *5 (N.D. Cal. June 14, 2022) ("Although the Government has a strong interest in enforcing the immigration laws and in ensuring that lawfully issued removal orders are promptly executed, the Government's interest in detaining Petitioner without providing an individualized bond hearing is low."). Courts generally have found that the cost of providing a custody hearing is relatively minimal, and there is nothing in the record before this

Court demonstrating that providing Petitioner with a pre-deprivation hearing would be fiscally or administratively burdensome. See J.A.E.M., 2025 WL 3013377, at *7 ("In immigration court, custody hearings are routine and impose a 'minimal' cost." (citing Doe, 787 F. Supp. 3d at 1094)).

On balance, the Mathews factors show that Petitioner is entitled to notice and a bond hearing and "[t]hat hearing should have occurred before petitioner was re-detained." Carmen G.C. v. Robbins, No. 1:25-cv-01648-KES-HBK (HC), 2025 WL 3521304, at *7 (E.D. Cal. Dec. 8, 2025).

> "'[T]he root requirement' of the Due Process Clause" is "'that an individual be given an opportunity for a hearing *before* he is deprived of any significant protected interest.'" *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 542 (1985) (quoting *Boddie v. Connecticut*, 401 U.S. 371, 379 (1971)); *see Zinermon*, 494 U.S. at 127 ("Applying [the *Mathews*] test, the Court usually has held that the Constitution requires some kind of a hearing *before* the State deprives a person of liberty ...."). Courts typically require evidence of urgent concerns or an especially strong government interest to justify a post-deprivation hearing. *See Guillermo M. R.*, 2025 WL 1983677, at *9; *United States v. James Daniel Good Real Prop.*, 510 U.S. 43, 53, 59–61 (1993) ("We tolerate some exceptions to the general rule requiring predeprivation notice and hearing, but only in extraordinary situations where some valid governmental interest is at stake that justifies postponing the hearing until after the event[,]" such as "executive urgency." (internal quotations omitted)).

Carmen G.C., 2025 WL 3521304, at *7.

Respondents state that "if the court disagrees with Respondents, finding both that exhaustion is waived and that Petitioner is entitled to process beyond what is authorized by 8 U.S.C. § 1225(b), Respondents request the Court order that Petitioner receive process consistent with 8 U.S.C. § 1226(a) and its implementing regulations." (ECF No. 21 at 10.) Respondents argue that "[s]uch hearing should be the same as a custody redetermination hearing before an Immigration Judge" at which "the IJ should be permitted the discretion to undertake the inquiry normally associated with such redetermination hearings." (Id. (citing *In re Guerra*, 24 I. & N. Dec. 37, 39–40 (BIA 2006) (listing nine factors for IJs to consider).) Respondents further argue that the "Court also should not order process beyond this hearing or alter the burdens imposed on the parties by statute, as doing so would be creating additional process beyond the statutory

scheme, which reviewing courts are generally not free to impose." (ECF No. 21 at 10 (citing Johnson v. Arteaga-Martinez, 596 U.S. 573, 582 (2022)).)

The Court does not find Respondents' argument persuasive. The Ninth Circuit has confirmed that the government bears the "clear-and-convincing burden of proof" at an immigration bond hearing ordered pursuant to the Due Process Clause. Martinez v. Clark, 124 F.4th 775, 784–86 (9th Cir. 2024). Thus, at such a pre-deprivation hearing, the government bears the burden of proving by clear and convincing evidence that Petitioner is a danger to the community or a flight risk such that re-detention is warranted. See Carmen G.C., 2025 WL 3521304, at *7 ("On balance, the *Mathews* factors show that petitioner is entitled to a bond hearing where the government must prove that she is a flight risk or danger to the community by clear and convincing evidence."); J.E.H.G. v. Chestnut, No. 1:25-cv-01673-JLT SKO, 2025 WL 3523108, at *14 (E.D. Cal. Dec. 9, 2025) ("[T]he immigrant's initial release reflected a determination by the government that the noncitizen is not a danger to the community or a flight risk. Since it is the government that initiated re-detention, it follows that the government should be required to bear the burden of providing a justification for the re-detention."). "Moreover, several courts have explicitly discussed the discretionary nature of revocation of parole under § 1226, and held that despite such discretion, changed circumstances are necessary in order to revoke parole under § 1226." Tenorio Rugama v. Chestnut, No. 1:25-cv-1918 AC, 2025 WL 3707234, at *4 (E.D. Cal. Dec. 22, 2025) (collecting cases).

Based on the foregoing, Petitioner has demonstrated that he has a strong liberty interest in remaining out of custody, that the risk of erroneous deprivation will be meaningfully reduced by requiring notice and a pre-detention hearing before a neutral decisionmaker, and that the governmental burden in providing such procedure is quite minimal.[4]

### C. Appropriate Relief

Courts in this district have taken differing approaches to the relief granted to petitioners who have been released, subsequently re-detained, and denied bond hearings in violation of due

---

[4] In light of this conclusion, the Court declines to address Petitioner's substantive due process, Fourth Amendment, and statutory claims.

process. In some cases, the immediate release of the petitioner has been ordered. See, e.g., Yurani Hortua v. Chestnut, No. 1:25-cv-01670-TLN-JDP, 2025 WL 3525916 (E.D. Cal. Dec. 9, 2025) (ordering immediate release of petitioner who had been released from immigration detention on parole, was arrested for theft but the case was resolved with community service and did not result in a conviction, and was re-detained at a routine six-month check-in); Carmen G.C., 2025 WL 3521304 (ordering immediate release of petitioner who allegedly violated reporting requirements four times); Rocha Chavarria v. Chestnut, No. 1:25-cv-01755-DAD-AC, 2025 WL 3533606 (E.D. Cal. Dec. 9, 2025) (ordering immediate release of petitioner who allegedly "incurred compliance violations" that were not identified and where respondents did not suggest the alleged violations were the reason for petitioner's re-detention).

In other cases, bond hearings have been ordered rather than immediate release. See, e.g., J.E.H.G., 2025 WL 3523108 (ordering bond hearing for petitioner who allegedly violated reporting requirements numerous times and was re-detained based on said violations); Paz Aguilera, 2025 WL 3485016 (ordering bond hearing for petitioner who allegedly violated reporting requirements one time and was re-detained based on said violation); Sharan S., 2025 WL 3167826 (ordering bond hearing for petitioner who allegedly violated reporting requirements eight times).

Here, Respondents do not allege, and there is nothing in the record before this Court, that Petitioner violated his conditions of release. Respondents do not contend that Petitioner is a danger or flight risk. Accordingly, the Court finds that Petitioner's immediate release is the appropriate remedy.

### D. Request for Abeyance Pending Ninth Circuit's Rodriguez Vazquez Decision

> The 8 U.S.C. §§ 1225 and 1226 issue raised by Petitioner is arising in many immigration cases, including *Rodriguez Vazquez v. Bostock*, 779 F.Supp.3d 1239 (W.D. Wash. 2025), which is on an expedited appeal to the Ninth Circuit and appears to be set for argument on the February 2026 calendar (Ninth Circuit Docket No. 25-6842). The statutory analysis in that case may be dispositive of issues herein. Respondents therefore request that the court hold its ruling on the merits in abeyance pending the Ninth Circuit's ruling in *Rodriguez Vazquez*.

(ECF No. 21 at 4–5.) Petitioner objects to an abeyance because "without this Court's prompt

issuance of a preliminary injunction, Petitioner will continue to suffer immense irreparable injury." (ECF No. 22 at 9.) Petitioner also notes that Rodriguez Vazquez "appears to concern whether 8 U.S.C. § 1225(b)(2)(A) could be applied to noncitizens living in the country for many years" whereas "Petitioner raises a due process claim based on the liberty interest that developed during his two years *on release*." (Id.)

As noted by Petitioner, Rodriguez Vazquez v. Bostock, 779 F. Supp. 3d 1239, 1245 (W.D. Wash. 2025), concerned a noncitizen who entered the United States without inspection, lived in the country for fifteen years, was apprehended by ICE, and raised a statutory claim that he is detained under § 1226(a) and not subject to mandatory detention under § 1225(b)(2). The Court is doubtful that the Ninth Circuit decision in Rodriguez Vazquez will address the procedural due process claim raised in the present case. Accordingly, the Court denies Respondents' request that the Court hold its ruling on the merits in abeyance pending the Ninth Circuit's ruling in Rodriguez Vazquez.

### III.

### ORDER

Based on the foregoing, the Court HEREBY ORDERS that:

1. The First Amended Petition (ECF No. 15) is **GRANTED** on the second claim for relief.
2. Petitioner's motion for preliminary injunction (ECF No. 16) is DENIED as MOOT.
3. Respondents **SHALL IMMEDIATELY RELEASE** Petitioner Gurpartap Singh from custody with the same conditions he was subject to immediately prior to his re-detention on May 26, 2025.
4. Respondents are **ENJOINED AND RESTRAINED** from re-detaining Petitioner absent compliance with constitutional protections, which include, at a minimum, pre-deprivation notice—describing the change of circumstances necessitating his arrest and detention—and a pre-deprivation hearing before a neutral decisionmaker. At any such hearing, the government shall bear the burden of establishing, by clear and convincing evidence, that Petitioner poses a danger to the community or a risk of flight, and Petitioner shall be allowed to have counsel present.

5. On or before Monday, January 26, 2026, Respondents SHALL FILE a status report confirming that Petitioner has been released from custody.

IT IS SO ORDERED.

Dated: **January 22, 2026**           /s/ Erica P. Grosjean
                                      UNITED STATES MAGISTRATE JUDGE